IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mohammed Elabiad,                    Case No. 3:03CV7452

         Plaintiff

    v.                                                 ORDER

Trans-West Express, LLC, et al.,

         Defendants

This is a diversity personal injury action brought by Mohammad Elabiad against defendants Burlington Northern Santa Fe Railway Co. (BNSF), Trans-West Express, LLC (TWX), Transtel, Inc. (Transtel), U.S. Tsubaki, Inc. (UST), Shanghai Boashan Pacific Container, Ltd. (SBPC), and China Hangzhou International Economic Cooperation Co., Ltd. (CHIECC). This court has jurisdiction pursuant to 28 U.S.C. § 1332.

Pending are motions for summary judgment from defendants Transtel and UST. For the reasons that follow, Transtel's motion shall be denied, and UST's shall be granted as to Elabiad's intentional tort claim, but otherwise denied.

**Background**

On July 27, 2001, Elabiad was injured while opening the doors to a truck container loaded with crates of industrial chain. Several crates inside had broken allowing the freight to shift near the doors. When Elabiad opened the container doors, the chain fell out and struck him.

In late 2000, after completing driving school training and passing several tests, Elabiad attained a commercial trucker's license and soon thereafter was referred to TWX by an entity called Great White. Elabiad, Great White, and TWX entered into an arrangement under which Great White leased its truck to TWX for Elabiad's use as an employee-driver for TWX. Under this agreement, brokered by Transtel, Inc., Great White would bill TWX for services rendered by Elabiad driving Great White's truck. In turn, Great White would pass on a portion of the proceeds to Elabiad.

The container originated at CHIECC in Hangzhou, China. The container was transported to Shanghai where it was loaded onto a ship and transported to California. Once in California, the container was transferred to a BNSF train and brought to BNSF's Corwith Yard in Chicago, Illinois. The container was then off-loaded and placed on a chassis for delivery to UST in Sandusky, Ohio.

Elabiad arrived at the Corwith Yard with his truck to pick up the container. Elabiad noticed that the chassis on which the container initially was loaded had a broken spring, prompting him to request a replacement chassis. A new chassis was provided. Elabiad remained in the cabin of his truck during the transfer of the container onto the new chassis. As the container was dropped onto the new chassis, Elabiad heard a heavy sound. Elabiad transported the container to UST in Sandusky, Ohio.

After arriving in the early morning, Elabiad slept in his truck until UST opened around 7:00 a.m. When the facility opened, Elabiad borrowed bolt cutters from a UST employee and prepared to comply with the facility procedures which required him to break the seal on the container and open its doors.

2

Because of the configuration of the loading dock at UST's facility, drivers could not open containers at UST's dock. Rather, drivers routinely had to park on a street next to the UST facility and open the containers there before backing to UST's dock to complete unloading. Elabiad knew this procedure from previous deliveries he had made to the Sandusky UST facility.

The container was twenty feet in length and required a sliding chassis to keep its contents centered during transport. Elabiad had been instructed in driving school on the proper technique for opening such containers, which involved sliding the container to the back of the chassis from its centered position, and then opening the right hand door first. Elabiad, however, left the container in its centered position and climbed on the chassis to reach the seal and doors.

Elabiad was unable to open the right door, which had rusted shut. After struggling with the right door, Elabiad proceeded to try to open the left door. When the left door unlocked, the displaced contents forced the doors open, knocking Elabiad to the ground, where chain landed on his legs and injured him.

## Discussion

### 1. Transtel's Motion for Summary Judgment

Transtel moves for summary judgment on Elabiad's negligence claim on the grounds that it was merely a broker and owed no duty to Elabiad. Elabiad contends that Transtel and TWX are "one-of-the-same" (*sic*). Transtel vigorously denies any allegation that it and TWX are "of in the same" (*sic*) [i.e., "one and the same"], so that an analysis of whether TWX's corporate veil may be pierced is necessary.

To disregard the corporate form, I must find:

3

>1. Control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence, of its own;
>2. Control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and
>3. Injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 288 (1993); s*ee also Bucyrus-Erie Co. v. Gen. Prod. Corp.*, 643 F.2d 413, 418 (6th Cir. 1981).

If these three requirements are met, the corporate veil will be pierced and the parent corporation consequently determined to be the "alter-ego" of the subsidiary. *Bucyrus-Erie Co.*, 643 F.2d at 418; *Belvedere*, 67 Ohio St. 3d at 617.

TWX was founded in late 2000 by Transtel, Healthcon International, and Container Transport with a $5,000 capital investment from Transtel. Approximately six months into operation, Transtel bought out the other two shareholders and gave a fifty percent stake to Debby Gonzalez, TWX's operations manager. TWX owned no inventory or equipment other than "maybe a computer." (Doc. 66 at 23). During operation, TWX leased office space from Transtel and the two shared a conference room. In 2002, a little over one year after incorporation, TWX was involuntarily dissolved by the State of Illinois.

As evidence that Transtel and TWX were alter egos, Elabiad offers Transtel's refusal to provide any tax documents for TWX, TWX's lack of assets, TWX's apparent under-capitalization, Transtel's occasional supervision of TWX's accounting, and TWX's involuntary dissolution. In response, Transtel offers little but repeated, conclusory declarations that the two companies were in fact separate.

Factual issues relating to the prongs of the veil-piercing test are properly reserved for trial. *See Miles v. Kohli & Kaliher Assoc.*, 917 F.2d 235, 255 (6th Cir. 1990); *Sanderson Farms, Inc. v. Gasbarro*, 2004 Ohio 1460 (Ohio Ct. App. 2004). I am unpersuaded that such conclusory declarations

4

show the absence of a triable issue of fact. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). It is unclear to what extent, if any, Transtel controlled TWX, or whether any such control was exercised in such a manner as to commit a fraud or illegal act. As such, summary judgment would be inappropriate.

### 2. UST's Motion for Summary Judgment

UST seeks summary judgment on Elabiad's claims against it for negligence and intentional tort arising from UST's alleged failure to provide Elabiad with a safe place for him to deliver cargo.

### a. Negligence

UST contends that it is entitled to summary judgment on Elabiad's negligence claim because: 1) Elabiad was injured on a public street adjacent to UST's facility, not on UST's premises, and thus, UST owed no duty to Elabiad; and 2) even if a duty existed, UST did not breach such duty.

Ohio uses the common-law classifications of invitee, licensee, and trespasser in cases of premises liability to define a landlord's scope of legal duty to an entrant. *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 75 Ohio St. 3d 312, 315 (1996) (citing *Shump v. First Continental-Robinwood Assoc.*, 71 Ohio St. 3d 414, 417 (1994)).

Invitees are persons who rightfully enter the premises of another by invitation, express or implied, for a purpose of benefit to the owner. *Gladon*, 75 Ohio St. 3d at 315 (citing *Light v. Ohio Univ.*, 28 Ohio St. 3d 66, 68 (1986); *Scheibel v. Lipton*, 156 Ohio St. 308, paragraph one of the syllabus (1951)). In the present case, Elabiad was UST's invitee.

In Ohio, a business owner has a "duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal*

5

*v. Rite Aid Pharmacy, Inc.*, 18 Ohio St. 3d 203 (1985). This duty includes an obligation "to provide a reasonably safe ingress and egress for the benefit of its business invitees." *Tyrrell v. Inv. Assoc., Inc.*, 16 Ohio App. 3d 47, 49 (1984); *see also Albright v. Univ. of Toledo*, 2001 WL 1084461, 8-9 (Ohio Ct. App., Sept. 18, 2001) ("An ordinarily prudent person would take reasonable precautions to ensure that its patrons exit and enter the premises safely.")

Neither party provided me, nor has independent research revealed, any Ohio case that presents a similar factual scenario.[1] Courts from other jurisdictions, however, have addressed the issue of extraterritorial liability and found that liability may exist beyond the strict confines of a landowner's property lines. *See, e.g., Ollar v. Spakes*, 601 S.W.2d 868, 870 (Ark., 1980) (noting that "the liability of the owner operator of a business to an invitee is not necessarily confined to his property boundary lines; however, before extraterritorial liability attaches, it must be shown that the owner or operator had actual or constructive knowledge of the danger of injury to his invitees."); *Stephens v. Bashas' Inc.*, 924 P.2d 117 (Ariz. Ct. App. 1996) (holding that an owner of a warehouse facility owed a truck driver a duty of care where the truck driver was injured while attempting to open the doors on his truck while parked on the

---

[1] While no Ohio case is directly on point, Ohio courts, generally, refuse to impose liability on landowners for injuries that occur to an invitee beyond a landowner's boundary lines. *See e.g., Albright*, 2001 WL 1084461 at *3-9 (discussing Ohio case law regarding whether a business owner has "a duty to ensure that its invitees have a means of ingress and egress that will not harm the invitee/pedestrian walking across a public street between two disconnected portions of the owned premises").

In each of the cases discussed in *Albright*, Ohio courts refused to impose liability on landowners because the landowners did not have possession of, exert sufficient control over, or assume a duty to the invitee while he or she was on the adjacent property. The present case is distinguishable; UST knew and in fact required invitees to use adjacent premises when making deliveries. Based on these facts, I conclude that an Ohio court would impose a duty on UST.

6

adjacent street; the layout of the facility required the truck driver to open his doors on the adjacent street before backing up to the warehouse dock); *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 772 (Ind. Ct. App. 1986) (holding that pub owner owed duty to invitee who was assaulted on adjacent property).

In Ohio, a property owner's liability to an invitee flows from possession and control of the business premises. *Wireman v. Keneco Distribs.*, 75 Ohio St. 3d 103, 108 (1996) (citing *Wills v. Frank Hoover Supply*, 26 Ohio St. 3d 186 (1986)); *see also Simmers v. Bentley Constr. Co.*, 64 Ohio St. 3d 642, 645 (1992) ("a landowner's liability in tort is incident to the occupation or control of the land.")

With regard, more generally, to determining whether one owes a duty of care to another, the Ohio Supreme Court in *Mussivand*, 45 Ohio St. 3d at 318 has stated:

> There is no formula for ascertaining whether a duty exists. Duty ". . . is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, Palsgraf Revisited (1953), 52 Mich. L. Rev. 1, 15). . . ." *Weirum v. RKO General, Inc.* (1975), 15 Cal. 3d 40, 46, 123 Cal. Rptr. 468, 471, 539 P. 2d 36, 39.

Elabiad contends that UST should have provided a place on its own premises to enable him to open his doors safely. I disagree with UST's assertion that it owed no duty to Elabiad as an invitee because Elabiad was not within the boundaries of UST's premises at the time of the accident.

UST exercised sufficient control over the adjacent property to create a duty to Elabiad. To hold otherwise would permit a business invitor, like UST, to use adjacent property for its economic benefit while simultaneously insulating itself from liability that would otherwise arise if the incident had occurred on its own premises.

7

UST invited Elabiad to enter its premises for the purpose of unloading cargo. Elabiad had entered UST's premises to retrieve bolt cutters from UST's employees with which to cut the seal and pin on the container. No one disputes that at the time of Elabiad's injury, UST knew who he was, expected an imminent delivery from him, and was fully aware of his presence on adjacent property.

UST knew, and in fact, due to the layout of its facility, required, that its invitees had to use the adjacent premises in connection with the invitation. "When the activities conducted on the business premises affect the risk of injury off-premises, the landowner may have an obligation 'to correct the condition or guard against foreseeable injuries.'" *Stephens*, 924 P.2d at 121 (quoting *Ember*, 490 N.E.2d at 772). "This is particularly true when the activity involves use of the adjoining way to the business's commercial advantage." *Id*. (quoting *Ember*, 490 N.E.2d at 773)**;** *see also Ember*, 490 N.E.2d at 772 ("A duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation.")

This duty is even more obvious when the condition of defendant's premises requires that the invitee be on adjacent property.

Accordingly, I find that UST owed Elabiad a duty of ordinary care to provide Elabiad with a reasonably safe means of ingress.

I also find that there is substantial evidence that UST did not provide Elabiad with a reasonably safe means of ingress to complete his work and that this failure caused his injuries. Therefore, summary judgment in favor of UST is inappropriate.

### b. Intentional Tort

UST contends that it is also entitled to summary judgment on Elabiad's intentional tort claim because Elabiad was not an employee of UST at the time of his injury.

The Ohio Supreme Court clarified the elements a plaintiff must prove to establish a claim for intentional tort in *Fyffe v. Jeno's Inc.*, 59 Ohio St. 3d 115, 118 (Ohio 1991) (emphasis added):

> (1) knowledge by the *employer* of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the *employer* that if the *employee* is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the *employee* will be a substantial certainty; and (3) that the *employer*, under such circumstances and with such knowledge, did act to require the *employee* to continue to perform the dangerous task.

As the Ohio Supreme Court articulated by using the terms "employer" and "employee" in the elements, an intentional tort claim requires the existence of an employer-employee relationship.

The need for an employer-employee relationship is further evidenced by the relationship of intentional tort claims to Ohio's Workers Compensation system:

> There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an 'intentional tort' . . . .

*Sanek v. Duracote Corp.*, 43 Ohio St. 3d 169, 173 (Ohio 1989) (quoting *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St. 3d 100, 117 (Ohio 1988)).

It is undisputed that Elabiad was not an employee of UST. Because Elabiad is unable to show the existence of an employer-employee relationship, UST's motion for summary judgment as to his intentional tort claim is properly granted.

## Conclusion

In light of the foregoing, it is

9

ORDERED THAT:

1. Transtel's motion for summary judgment be, and the same hereby is, denied;

2. UST's motion for summary judgment be, and the same hereby is, granted as to Elabiad's intentional tort claim, but otherwise denied.

So ordered.

/s/James G. Carr
James G. Carr
Chief Judge