IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO – WESTERN DIVISION

| | |
|---|---|
| MOHAMMAD ELABIAD,<br><br>     Plaintiff,<br><br>v.<br><br>TRANS-WEST EXPRESS, LLC.; TRANSTEL, INC.; U.S. TSUBAKI, INC.; BURLINGTON NORTHERN SANTA FE RAILWAY, CO.; SHANGHAI BAOSHAN PACIFIC CONTAINER, LTD.; CHINA HANGZHOU INTERNATIONAL ECONOMIC COOPERATION CO., LTD.; and DOES 1-5 inclusive,<br><br>     Defendants. | Case Number:  3:03-cv-07452-JGC<br><br>**PLAINTIFF MOHAMMAD ELABIAD'S MOTION TO AMEND JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF JIHAD M. SMAILI** |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO AMEND JUDGMENT TO ADD SINGAMAS CONTAINER HOLDINGS LIMITED, SINGAMAS NORTH AMERICA, INC., AND SINGAMAS MANAGEMENT SERVICES LIMITED AS JUDGMENT DEBTORS**
_____

COMES NOW, MOHAMMAD ELABIAD (hereinafter "Plaintiff"), by and through undersigned counsel of record, and hereby moves this Honorable Court to amend the judgment in this action to reflect Singamas Container Holdings Limited (hereinafter "SCH"), Singamas North America, Inc. (hereinafter "SNA") and Singamas Management Services Limited (hereinafter "SMS") as Judgment Debtors and Issue Writ of Execution.

**I. BACKGROUND**

In 2003, Plaintiff suffered severe personal injury as a result of the named Defendants' negligence and product liability. Subsequently, Plaintiff filed suit in the federal district court for the Northern District of Ohio against the following named Defendants on or about July 28, 2003 with the indicated outcome:

| | | |
|---|---|---|
| 1. | Trans-West Express, L.L.C. ……………………….. | (settled) |
| 2. | Transtel, Inc. ………………………………………….. | (settled) |
| 3. | U.S. Tsubaki, Inc. ……………………………… | (Jury Trial; Verdict) |
| 4. | Burlington Northern Santa Fe Railway Co. ……. | (settled) |
| 5. | Shanghai Baoshan Pacific Container, Ltd. …… | (Default Judgment) |
| 6. | China Hangzhou Int. Eco. Coop. Co., Ltd. …… | (Default Judgment) |

Plaintiff filed in federal district court based on diversity of jurisdiction. In 2004, Chief Judge James G. Carr entered default judgments in favor of Plaintiff and against both of the Chinese Defendants (Exhibit "A"), and in 2008 judgment was entered against these two Chinese Defendants in the amount of $4,381,600 each. (Exhibit "B")

For over three (3) years, Plaintiff has attempted to collect on the judgment entered against Shangai Baoshan Pacific Container, Ltd. (hereinafter "SBPC") and China Hangzhou International Economic Cooperative, Ltd. (hereinafter "CHIEC"), without success, and Plaintiff now faces serious challenges regarding the collection of the money judgment as it pertains to Defendants SBPC and CHIEC.

Since the entry of judgment, Plaintiff has struggled to locate and/or levy on these Defendants and/or their interests.

Both SBPC and CHIEC were properly served with the Complaint and all other necessary documents as required through The Hague on or about December 10, 2003 (Exhibit "C") but never entered an appearance, filed an answer, or otherwise defended the action.

Accordingly, Plaintiff's counsel, through his investigator, discovered information that demonstrates that SCH (a Chinese Conglomerate) now owns, controls, operates, and manages Defendant SBPC. Starting in 2003, SCH increased its ownership and control of Defendant SBPC from a 74% Share interest to a controlling interest in 2005. (Exhibits "D" – "E")

In SCH's Annual Reports and Results for 2005, SCH lists SBPC's accounts as having been "fully consolidated with [SCH's] accounts." SCH operates in the United States through SNA, a California corporation, (Exhibit "F") and lists SNA as its marketing company in the United States.

As a direct result, Plaintiff's attorney registered the judgment with the Central District of California in 2010 in order to further Plaintiff's collection efforts (Exhibit "G"). The undersigned even attempted to contact several attorneys of the law firm Latham & Watkins as listed on SCH's website and the agent for service of process for SNA registered with the California SOS, to no avail. (Exhibit "H")

Soon thereafter, SNA commenced an unveiled effort to fraudulently hide its interests and holdings by assigning certain of its contractual rights to a British Virgin Islands company named SMS. (Exhibit "I")

Subsequently, Plaintiff's counsel moved the Central District of California to amend this Court's judgment reflecting the true identities of the debtors. (Exhibit "J") However, the Central District of California denied the motion, asserting that only this Court would have jurisdiction to do so. (Exhibit "K")

Presently, Plaintiff seeks the assistance of this Honorable Court to amend the judgment to reflect SCH, SNA and SMS as proper judgment debtors so that Plaintiff can register the amended judgment in California and collect on his duly entered judgment.

## II. This Court Has the Power To Amend Its Judgment

Congress codified much of the common-law doctrine of ancillary jurisdiction as part of supplemental jurisdiction under 28 U.S.C. § 1367. It has been recognized that a federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379-380 (1994). In order for this Court to "effectuate its decrees," i.e. judgment in this case, the judgment must be amended to reflect the true debtors.

The well-established principle of ancillary jurisdiction gives this Court a basis upon which it can decide other matters raised by the case at bar, even where this Court would not have such authority were the issues (here, enforcement and collection of judgment) independently presented. "Ancillary jurisdiction is based on the premise that a district court acquires jurisdiction over a case or controversy in its entirety and, as an incident to the disposition of a dispute that is properly before it, may exercise jurisdiction to decide other matters raised by the case over which it would not have jurisdiction were they independently presented * * * [which includes] the power to conduct proceedings necessary to protect and give effect to its judgments." Sandlin v. Corporate Interiors, Inc., 972 F.2d 1212 (10th Cir.). Reflecting the true names of the judgment debtors is required to protect and give effect to the judgment in the case at bar.

The Tenth Circuit Court of Appeals succinctly explained and analyzed ancillary jurisdiction as it relates to amending a judgment in aid of execution. In the case of *Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212, the Court of Appeals for the Tenth Circuit stated the following:

> The focus of these appeals is the scope of a federal court's ancillary jurisdiction, in aid of its judgment and not merely the scope of Fed.R.Civ.P. 69. Rule 69 creates a procedural mechanism for exercising post-judgment enforcement when ancillary jurisdiction exists, *see* Argento v. Village of Melrose Park, 838 F.2d 1483, 1487 (7th Cir.1988), but cannot extend the scope of that jurisdiction. *See* Fed.R.Civ.P. 82; Blackburn Truck Lines Inc. v. Francis, 723 F.2d 730, 732 (9th Cir.1984); *see also* Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978) ("it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction").
>
> * * *
>
> Ancillary jurisdiction is based on the premise that a district court acquires jurisdiction over a case or controversy in its entirety and, as an incident to the disposition of a dispute that is properly before it, may exercise jurisdiction to decide other matters raised by the case over which it would not have jurisdiction were they independently presented.
>
> * * *
>
> Within a federal court's ancillary jurisdiction is the power to conduct proceedings necessary to protect and give effect to its judgments. *See, e.g.,* Finley v. United States, 490 U.S. 545, 551, 109 S.Ct. 2003, 2007, 104 L.Ed.2d 593 (1989); 7 James Wm. Moore et al., Federal Practice p 69.03, at 69-14 (2d ed. 1991).
>
> * * *
>
> 'That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled,' Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934); otherwise, '[t]he judicial power would be incomplete, and entirely inadequate to the purposes for which it was intended,' Bank of the United States v. Halstead, 23U.S. (10 Wheat.) 51, 53, 6 L.Ed. 264 (1825).

Plaintiff solely seeks to replace the name of the debtors at the time the Ohio action was filed with the current true name of the debtors. There are no third parties that are being brought in, and no new theories of damages or liability introduced. As the arguments and evidence set forth in the Motion indicate, SBPC was fully and completely consolidated into SCH (which now controls, operates, owns and manages SBPC).

This Court is asked to use its powers, be they under Fed. R. Civ. P. 69 or under its ancillary jurisdiction powers, in order to amend the judgment entered against SBPC in order to reflect the true debtors so that Plaintiff can collect on the judgment.

### III. Successor Liability

Under the doctrine of successor liability, the general rule is that in the absence of a statute, a successor company ordinarily is not liable for the debts of a predecessor or selling company unless (1) there was an agreement to assume such debts, (2) the circumstances surrounding the transaction warrants a finding of a consolidation or merger of the two corporations, (3) the successor company was a mere continuation of the predecessor, or (4) the transaction was entered into fraudulently for the purpose of wrongfully defeating creditors' claims. *See, e.g.,* Simmons v. Mark Lift Indus., Inc., 366 S.C. 308, 622 S.E.2d 213, 215 (2005) (emphasis in original; footnotes omitted).

However, over the past twenty years, both state and federal courts have routinely applied the doctrine to commercial cases, business torts and—at least since the 1970s—products liability cases, irrespective of the underlying theory of liability or defect. An exception precludes a successor from shirking liability through ostensibly legitimate—be they complex and/or technical—legal transactions, such as mergers and re-incorporations, or by illegitimate means, such as outright fraudulent transfers. The exceptions to the successor liability doctrine extend the

-6-
PLAINTIFF'S MOTION TO AMEND JUDGMENT

potential liability of a predecessor all the way through to the initial, or even subsequent, successor companies.

Whether an exception applies and successor liability attaches typically is a function of the impetus, timing, characteristics, and consequences of a company's/transferee's asset acquisition. Considerations include, for example, whether the transferring company continues to exist. 1 Am. Law Prod. Liab. 3d § 7:28 (Timothy E. Travers ed., rev. ed. 2004).

There are four widely-accepted or "traditional" exceptions: Implied or express agreement to assume debts and liabilities, merger or consolidation, mere continuation, and fraudulent transfer. *See generally*, Simmons, *supra*, 622 S.E.2d at 215; Kaiser Found. Health Plan v. Clary & Moore, P.C., 123 F.3d 201, 204 (4th Cir. 1997); 63 Am. Jur. 2d Products Liability, §§ 116-139 (2004); Am. Law. Prod. Liab. 3d § 7:1. These traditional exceptions to the general rule of no liability were primarily developed to limit the ability of corporations to liquidate their assets, provide revenue to shareholders, and leave claimants without any equitable remedy whatsoever. Volvo White Truck Corp. v. Chambersburg Beverage, Inc., 75 B.R. 944, 950 (Bankr. N.D. Ohio 1987).

### A. Implied/Express Agreement to Assume Debts or Liabilities

Under this exception, the purchasing company either explicitly or implicitly agrees to assume the debts or liabilities of the seller. In such cases, the terms of the acquisition/transfer agreement control. *See* Harris v. T.I. Inc., 413 S.E. 2d 605, 608-09 (Va. 1992). Thus, when an acquisition/transfer agreement is drafted without language clearly assigning liability for product liability claims courts generally hold that the purchaser accepted the product liability claims. *See* Restatement (Third) of Torts, Prods. Liab. § 12 cmt c., illus. 2 (1997). These agreements can also be implied. Kessinger v. Grefco, Inc., 875 F.2d 145, 154-55 (7th Cir. 1989). For instance,

courts may hold that the successor accepted liability for a predecessor's product when, for example, that company honors a warranty.

SCH itself states on its official corporate disclosures that it owns and controls SBPC. Clearly, this would constitute an express agreement to assume debts and/or liabilities of SBPC by SCH.

### B. Merger or Consolidation

Under the "Merger or Consolidation" exception, upon the transfer of a corporate enterprise through a merger, consolidation, or sale of stock, the transferee assumes its predecessor's liabilities. Am. Law. Prods. Liab. 3d § 7:10. Liability also survives when a selling corporation retains its existence but sells its assets and the buyer gives stock in return, creating a *de facto* merger. Id. This is a basic tenant of corporate law that extends to other settings such as the products liability setting. See *Bernard v. Kee Mfg. Co. Inc.*, 409 So.2d 1047, 1049 (Fla. 1982).

In the case at bar, SCH's 2005 Annual Report specifically admits SCH's control over SBPC's board of directors, and that SBPC effectively became a fully owned subsidiary of SCH with its accounts "fully consolidated" with SCH. (Exhibit "D")

### C. Fraudulent Transfer

The fraudulent transfer exception arises when a transaction is fraudulently entered in an attempt to evade liability for actual or potential debts. The exception essentially is the equivalent to the general corporate rule of fraudulent conveyances. See *Raytech Corp. v. White*, 54 F.3d 187, 192 (3d Cir. 1994); this exception prevents the selling corporation from selling itself to another corporation in order to defeat its creditors. *Nat'l Carloading Corp. v. Astro Van Lines, Inc.*, 593 F.2d 559, 563 (4th Cir. 1979). By consolidating itself with SCH, SBPC attempted to escape its liability to Plaintiff. SCH's conduct in assigning its interest in a contract for the

manufacture of thousands of containers speaks volumes of the extent to which SCH is willing to go to avoid paying Plaintiff for the judgment.

Given the above legal basis for amending the judgment to include SCH, SNA and SMS, this Court should allow for such amendment in the interests of justice and judicial economy.  In the end, SCH, by virtue of its own website, describes and admits its ownership, consolidation and control of SBPC.  There remains no doubt that SCH and SBPC are one in the same.

IV. **Conclusion**

Based on the above, the undersigned respectfully requests that the judgment entered in this action be amended to reflect SCH, SNA and SMS as proper judgment debtors.

Respectfully submitted,

Dated:  11/04/2011

By:_____/s/ Jihad M. Smaili_____
         Jihad M. Smaili, attorney for Plaintiff

### **CERTIFICATE OF SERVICE**

     A true and accurate copy of the attached Motion along with Exhibits, has been sent via Regular U.S. and International Mail this 4th day of November, 2011 to:

Shanghai Baoshan Pacific Container, Ltd.,
No. 2020, Bao Yang Road
Bao Shan District, Shanghai, 201900
People's Republic of China

Singamas Container Holdings, Ltd.
Corporate Office
19/F., Dah Sing Financial Centre,
108 Gloucester Road, Hong Kong

Singamas North America, Inc.
C/O Myungsoo Lee
2410 Camino Ramon, Ste. 135
San Ramon, CA 94583

Singamas Management Services, Ltd.
P.O. Box 71
Craigmuir Chambers
Road Town, Tortola, British Virgin Islands

                                              */s/ Jihad M. Smaili*
                                              Jihad M. Smaili